CARPENTER, Appellant and Cross–Appellee,

v.

REIS, Appellee and Cross–Appellant.

[Cite as *Carpenter v. Reis* (1996), 109 Ohio App.3d 499.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–101.

Decided Feb. 23, 1996.

*Theodore B. Tucker III*, for appellant and cross-appellee.

*George Gernot III*, for appellee and cross-appellant.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which ordered plaintiff-appellant/cross-appellee, Jane E. Carpenter, to pay $325.10 per month, plus poundage, as child support for her minor son, Timothy Reis.[1] Appellant appeals that judgment and sets forth the following assignment of error:

"The trial court erred when it failed to deviate from the Ohio child support guideline and/or otherwise take into account Social Security disability benefits from plaintiff/appellant's husband paid to or for the benefit of the minor child of the parties in determining appropriate child support to be paid by plaintiff/appel-

---

1. Separate consent judgments entered before final judgment in the instant case named Jane E. Carpenter as the residential parent and legal custodian of Timothy Reis, and George H. Reis as the residential parent and legal custodian of Tamara Reis. Although this transfer of custody appears to moot any issue with regard to Carpenter's child support obligation toward Timothy, a wage withholding order, journalized May 10, 1994, directed Carpenter's employer to withhold $76.52 from her weekly wages. Absent any indication in the record of this case to the contrary, we shall assume for the purpose of this appeal that Carpenter has been paying this child support amount from January 31, 1992, as recommended in the referee's report. Should Carpenter prevail in this appeal, she would be entitled to recover any overpayment on her child support obligation. Therefore, the question raised on appeal by Carpenter presents a justiciable controversy. That is, resolution of the issue presented is not purely academic and has a practical effect on the legal relations between the parties. *Cent. Motors Corp. v. Pepper Pike* (1983), 9 Ohio App.3d 18, 9 OBR 19, 457 N.E.2d 1178.

lant to defendant/appellee for the minor child of the parties and same was an abuse of discretion."

In its judgment, the domestic relations court denied the motion of defendant-appellee/cross-appellant, George H. Reis, for fees, costs, and expenses incurred as the result of filing a motion to compel the production of documents. Appellee cross-appeals that ruling and asserts the following assignment of error:

"The trial court committed reversible error when, having found defendant's motion to compel discovery well taken, and having ordered the production of Mrs. Carpenter's tax returns, the trial court failed to grant judgment for the fees and costs necessary to obtain production of the relevant subpoenaed information."

The facts relevant to the disposition of this case are as follows.

Appellant and appellee were divorced in 1984. Appellant was awarded custody of the parties' two minor children, Timothy and Tamara. In January 1992, appellee filed a motion to modify custody, asserting that Timothy, who was then fourteen years of age, was then living with his father. Appellee further asked the court to determine, among other things, the amount of appellant's child support obligation to Timothy.

In May 1992, the trial entered an interim consent judgment naming appellee as the residential parent and legal custodian of Timothy. Appellant was ordered to pay child support in the amount of $15.06 per week. Under the agreement, appellee was not required to pay any child support for Tamara.

During the subsequent discovery process, appellee served appellant with a subpoena *duces tecum* requesting that she produce copies of her joint federal, state and local income tax returns for the years 1989 through 1992, copies of her 1992 W–2 and 1099, any receipts or writings relevant to appellant's business for the calendar year of 1992 and year to date, and a copy of her most recent pay stub. Appellant was ordered to produce these items at her deposition held on March 9, 1993. She failed to produce the requested income tax returns. Pursuant to Civ.R. 37, appellee filed a motion to compel the production of the documents. After a hearing, the trial court granted this motion and ordered appellant to provide appellee with the requested tax returns at the hearing scheduled on the child support issues. Appellant complied with this order.

Appellee then filed an application for fees, costs, and expenses related to the motion to compel discovery. These included a $110 fee for service of the subpoena, $120 for the services of a court reporter at appellant's deposition and $392 for attorney fees that arose from the taking of appellant's deposition.

At a hearing held on June 16, 1993, a referee heard evidence on the issues of child support and appellee's motion for fees, costs, and expenses.

At the hearing, appellant revealed that she was employed as an assistant vice-president for Standard Federal Bank. Her gross income for 1992 was approximately $39,000. Her monthly salary, as of March 1993, was $2,415. Appellant has health and dental benefits for her entire family through her place of employment. Appellant is married to Bruce Carpenter, who is not employed but has an income of about $3,100 per month from Social Security disability payments and a Veterans' Administration pension.

At the time of the hearing, the Carpenters supported and cared for four children: Tamara, their own two children, and Bruce Carpenter's daughter (who was adopted by appellant). They recently moved to Michigan, where they purchased a home for $227,000. The mortgage on that house totalled $204,750. The Carpenters had not yet sold their house in Toledo, Ohio. This house was valued at $139,000 with a mortgage of $134,000. The Carpenters' monthly expenses, as of December 1992, were $4,473 per month. This figure does not include the increase in monthly mortgage payments due to the purchase of the new house.

Appellee testified that he worked at Detroit Stoker for thirteen years. In both 1990 and 1992, his gross earnings were slightly over $20,000 per year. Appellee was laid off in January 1992. During that year, he received $2,023.23 in wages, $200 per week in unemployment compensation and collected a gross monthly rental income of $700 from two rental properties. Appellee resided with his wife, Debra, whose gross earnings for 1992 were over $46,000, and his son Timothy. Appellee stated that Timothy received a $140 (recently increased to $145) per month Social Security payment as a result of his stepfather's disability. At the time of the hearing, appellee was unemployed. He listed his family's monthly expenses as $2,176.

On the question of whether appellee should be awarded costs and fees incurred as a result of his motion to compel, Bruce Carpenter testified that, upon receiving the subpoena *duces tecum*, he took appellant's joint federal, state and local tax returns and refused to allow appellant access to these returns. He gave the documents to appellant only after the trial court granted appellee's motion to compel, and then only after consulting with an attorney. Appellant corroborated this testimony.

In a December 1993 report and recommendation, the referee set forth several findings of fact associated with a determination of appellant's child support obligation. One of the findings stated:

"17. That the Plaintiff was unable to turn the prior years tax returns over to Defendant when previously requested because her husband locked them up."

The referee's sole recommendation did not address the question of child support. It recommended that appellee be awarded a lump sum of $702 for the fees, costs, and expenses incurred in the taking of appellant's deposition.

Both appellant and appellee filed objections to the referee's report and recommendation in which they asked the trial court to refer the case to the referee again for a determination of the child support obligation of the parties. The trial court sustained these objections and referred the cause to the referee with instructions to determine child support.

On April 29, 1994, the referee filed a second report and recommendations. This report incorporated the findings and recommendation provided in the December 1993 report. It also concluded, based on appellee's education and prior work history, that he was capable of earning at least $8,840 per year at a minimum wage. The referee therefore imputed this amount as income to appellee for the purpose of determining child support. Appellant's adjusted gross income for the purpose of determining child support was found to be $33,730. The referee specifically found that appellant was requesting that the $140 per month Social Security payment received by Timothy be applied as a credit against her child support obligation. The referee made the following recommendation:

"1. That having given consideration to the evidence before the Court and factors contained in Revised Code 3109.05(A)(a)-(j), and Revised Code 3113.215, as shown in this case, the prior order of the Court is modified from $65.00 per month per child plus poundage to $325.10 per month per child for (1) child plus poundage of 2% payable through the Lucas County Child Support Enforcement Agency effective January 31, 1992."

The referee further recommended that $76.52 per week be withheld from appellant's wages for the purpose of satisfying her child support obligation.

Appellant filed objections to the referee's report. She argued that the referee erred in failing to credit the $140 per month Social Security payment received by Timothy against her child support obligation. She also asserted that the award of the lump sum judgment of $702 was against the manifest weight of the evidence.

On March 13, 1995, the domestic relations court overruled appellant's objection to the recommended amount of the child support order. In doing so, the court found:

"The statutory language is clear. This court is empowered to deviate from the guidelines, if the guideline figure would not be in the child's best interest. In the case at bar, this court is of the opinion that the guideline figure of $325 per month is in the child's best interest. The amount arrived at via the utilization of the

guidelines is not unjust or inappropriate. Plaintiff has means to pay said obligation. The fact that her current husband qualifies the child for some benefit does not relieve Plaintiff of her obligation to pay. Therefore, the Referee properly recommended that Plaintiff be ordered to pay $325.10, plus poundage."

The trial court did, however, sustain appellant's objection to the lump sum judgment of $702. The court held that appellant demonstrated that it was impossible for her to produce the requested tax returns. From the court's judgment entry, it also appears that the trial court upheld appellant's objection on equitable grounds. That is, the court balanced appellant's failure to obtain a $140 per month credit against the lump sum judgment.

■ The sole issue in appellant's assignment of error is whether the trial court abused its discretion in failing to credit her child support obligation with the $140–$145 per month Social Security payment received by Timothy.

Essentially, this case involves a modification of child support due to an undisputed change in circumstances, *i.e.,* a change in custody.

In considering a motion for the modification of a child support obligation, a court must follow the mandates of R.C. 3113.215. R.C. 3109.05. Occurrences which constitute a change of circumstances sufficient to warrant consideration of the modification of a child support award are a ten-percent deviation from the statutory guidelines, inadequate medical insurance coverage of the child, and "a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order." R.C. 3113.215(B)(4).

Regardless of whether the change in circumstances was based on a change in income or other reasons, the court must then modify the amount of support in accordance with the basic child support schedule and worksheets. R.C. 3113.215(D) and (E). In setting the modified amount of child support, the court may deviate from the amount required by the basic child support schedule and worksheets in a case where, upon consideration of the statutory factors listed in R.C. 3113.215(B)(3), the court determines that such amount would be "unjust or inappropriate and would not be in the best interest of the child." R.C. 3113.215(B)(4). If the court decides to deviate from the basic child support schedule and worksheet, the court must make specific findings to support its decision. R.C. 3113.215(B)(2).

The question of whether to deviate from the child support guideline amount is a matter within the trial court's discretion, *Hockenberry v. Hockenberry* (1992), 75 Ohio App.3d 806, 812, 600 N.E.2d 839, and absent an abuse of discretion, this determination will not be disturbed on appeal. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. An abuse of discretion is more than an error of law or judgment; rather, it implies an attitude on the part of the trial court in

reaching its decision that is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

The first issue we must decide is a question of law. This issue is whether, under Ohio law, a court may consider Social Security benefits received by a child as the result of the disability of a stepparent in deciding to deviate from the basic child support schedule.

■ One of the factors to be considered by a trial court in determining whether to deviate from the child support guideline amount is the financial resources and earning ability of the child. R.C. 3113.215(B)(3)(f). Ohio courts regard governmental benefits received by a child due to the disability or retirement of either the child support obligor or child support obligee as a "financial resource" of the child that must be considered by the trial court when deciding whether to deviate from the statutorily determined child support amount. See *Previte v. Previte* (1994), 99 Ohio App.3d 347, 650 N.E.2d 919; *McNeal v. Cofield* (1992), 78 Ohio App.3d 35, 41, 603 N.E.2d 436, 439; *Dunn v. Taylor* (Jan. 16, 1996), Butler App. No. CA95–04–062, unreported, 1996 WL 12876; *Slowbe v. Slowbe* (Dec. 7, 1995), Cuyahoga App. No. 68739, unreported, 1995 WL 723333; *Brennan v. Brennan* (Nov. 9, 1995), Portage App. No. 94–P–0060, unreported, 1995 WL 803613. This approach is in accord with the law of other jurisdictions. See, generally, Annotation, Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child (1977 and Supp.1995), 77 A.L.R.3d 1315 (and the cases cited therein). In these types of cases, the rationale for permitting the credit for Social Security benefits is founded on the fact that the parent or obligor or obligee has, throughout his or her working life, contributed by means of wage deductions and the benefits were, therefore, in effect, earned by that individual. In other words, the benefit is viewed as a kind of insurance benefit accruing to the child because the parent paid the insurance premiums. *Miller v. Miller* (Alaska 1995), 890 P.2d 574, 576–577.

We have, however, been unable to find a case where the Social Security benefits paid to a child as the result of a relationship with a nonparent were permitted to be credited against the obligor's child support obligation. The only relatively recent[2] case found in Ohio that addresses this issue is *Houser v. Houser* (Sept. 24, 1982) Licking App. No. CA–2887, unreported, 1982 WL 5497.

---

■ But, see, *Brunner v. Williams* (1955), 100 Ohio App. 144, 60 O.O. 136, 135 N.E.2d 908, where the trial court deducted military allotments paid to a child as support by his mother's present husband from child support arrearages owed by the child's father. The appellate court affirmed this holding as not being against the manifest weight of the evidence.

In finding that the father's child support obligation could not be credited with veteran's benefits received by his child as a result of the child's relationship with a nonparent, the *Houser* court relied on *Fuller v. Fuller* (1976), 49 Ohio App.2d 223, 3 O.O.3d 273, 360 N.E.2d 357. In *Fuller*, the court refused to credit Social Security benefits paid to the child as a result of the father's disability against the father's child support arrearages accumulated prior to his disability. The *Houser* court cited the language in *Fuller* that indicated the Social Security benefits inured directly to the child despite the status of the obligor as the child's father. *Id.* at 225, 3 O.O.3d at 274, 360 N.E.2d at 358. From this, the *Houser* court reasoned that, *a fortiori*, benefits to the child received due to his relationship with a nonparent could not be credited against the father's child support obligation. *Id.* As discussed above, it is apparent that this particular reasoning in *Fuller* is no longer followed in Ohio. Thus, *Houser* has little or no value to this court in determining the issue raised by appellant.

In an Alabama appellate case, the court found that a father could not credit Social Security benefits received on behalf of children due to the disability of their stepfather against his child support arrearage. *Hebert v. Stephenson* (Ala.App.1990), 574 So.2d 835, 837. The court based its decision on the fact that it is the parents who owe their children a duty of support. Accordingly, the *Hebert* court found that the obligated parent of a child must actually contribute to the support of his or her child in order to receive a credit. *Id.* Significantly, the Alabama court did not deal with the question of whether Social Security benefits credit could be considered as a factor, financial resources of the child, in determining whether the statutory child support amount is unjust or inappropriate or in the best interest of the child.

■ Under Ohio law, the financial resources of the child must be considered in determining whether to deviate from the amount calculated pursuant to the child support statute. Indisputably, the Social Security benefits received by Timothy are a financial resource and must, therefore, be considered by a domestic relations court in making this determination. However, as stated previously, the decision to deviate is within the court's discretion. Nonetheless, because neither parent actually contributed to the benefit received by the child, when a court decides, in its discretion, to deviate from the basic child support schedule because the amount is unjust or inappropriate or not in the best interest of the child, it should not attribute the entire amount to either parent. As stated in *McNeal v. Cofield*, 78 Ohio App.3d at 39, 603 N.E.2d at 438, "[t]he proper method is to deduct all or part of the social security benefits received on behalf of the child from the guideline-determined necessary support predicated upon the best interests of the child and equity to both parents." The *McNeal* formula subtracts the amount of benefits received by or on behalf of the child from the total guideline-

determined necessary child support. The remaining child support need is allocated between the parents by the percentages reached in the guideline determinations. *Id.* We are persuaded that this is a just means to achieve a support award that is in the best interest of the child and is equitable to both parents.

In the present case, the trial court appeared to follow the reasoning in the *Hebert* case and rejected the idea of considering the Social Security benefits received by Timothy as a factor in determining whether to deviate from the child support guidelines. In addition, although the referee stated that all factors were considered, there is no indication in his report that the Social Security benefits were considered to be a "financial resource" of Timothy. For these reasons, we must reverse the trial court's judgment and remand this case for a redetermination of child support that comports with the law set forth in this decision.

Appellant's sole assignment of error is found well taken.

■ In his cross-assignment of error, appellee asserts that the trial court erred in rejecting the referee's recommendation to enter a lump sum judgment of $702 against appellant for her failure to produce her tax returns at her deposition. Appellee contends that the trial court was required to enter an express finding that the failure of appellee was substantially justified or that other circumstances make the award of expenses unjust.

■ Civ.R. 37 governs matters concerning a failure to provide discovery and the sanctions which can be imposed. The standard that an appellate court must employ in reviewing a trial court's disposition of discovery issues is whether the trial court abused its discretion. *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 458, 6 OBR 496, 498, 453 N.E.2d 700, 702.

We find no abuse of discretion because appellee relies on the wrong portion of Civ.R. 37.

■ Civ.R. 37(A)(2) provides that if a party fails to produce documents for inspection, the party requesting the documents may file a motion to compel discovery and ask the court to order the noncomplying party to produce these documents. Pursuant to Civ.R. 37(A)(4), if the motion is granted, the proponent may recover reasonable expenses, including attorney fees, incurred in obtaining the order. The trial court may, however, deny the motion for these expenses if it "finds that the opposition to the motion was substantially justified or that other circumstances make the award of expenses unjust."

Upon the motion of a party, Civ.R. 37(D) allows the trial court to impose immediate sanctions upon a party who, among other things, has not produced a requested document for inspection. In such an instance, the moving party may

recover reasonable expenses, including attorney fees, caused by the failure, unless the trial court "*expressly* finds that the opposition to the motion was substantially justified or that other circumstances make the award of expenses unjust." (Emphasis added.)

Civ.R. 37(A) is concerned with *compelling discovery* while Civ.R. 37(D) is concerned with the *immediate* application of sanctions against parties or persons. 1970 Staff Note to Civ.R. 37(D). In the case at bar, appellee filed a motion to compel, not a motion for sanctions. Thus, the trial court was not required to make the express finding mandated by Civ.R. 37(D). It did, however, expressly determine that the referee's finding was inconsistent and that, under the circumstances of this case, it was impossible for appellant to comply with the request for inspection of the tax returns. Accordingly, we cannot say that the trial court abused its discretion in denying the motion for fees, costs and expenses. Appellee's cross-assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed in part and affirmed in part. This cause is remanded to that court for further proceedings consistent with this judgment. Costs of this appeal assessed to appellant.

*Judgment affirmed in part*
*and reversed in part.*

MELVIN L. RESNICK, P.J., GLASSER and SHERCK, JJ., concur.